1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12 NANG SOUDCHANTHO,                    CASE NO. CV-F-04-6126 LJO

13                     Plaintiff,

          **DECISION ON SOCIAL SECURITY**
          **COMPLAINT**
14      vs.                            (Docs. 15, 18.)

15 JO ANNE B. BARNHART,
   Commissioner of Social
16 Security,

17                     Defendant.

18 _____/

19                      **INTRODUCTION**

20        Plaintiff Nang Soudchantho ("plaintiff") seeks this Court's review of an administrative law

21 judge's ("ALJ's") decision that plaintiff is not disabled and is ineligible for Supplemental Security

22 Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d. Pursuant

23 to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate

24 Judge, and by a December 23, 2005 order, this action was assigned to United States Magistrate Judge

25 Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the

26 papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security

27 ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to

28 deny plaintiff SSI or to remand for further proceedings.

**BACKGROUND**

**Plaintiff's Personal Background**

Plaintiff is age 59, a native of Laos and a permanent United States resident.  (AR 28, 70, 83, 231.)  Plaintiff lacks formal education and work experience, and is illiterate and unable generally to communicate in English.  (AR 70, 103, 113, 126, 231, 243, 293, 300.)  Plaintiff speaks Lao.  (AR 103.)

**Administrative Proceedings**

*Plaintiff's Prior SSI Application*

On June 18, 1993, plaintiff protectively filed her prior SSI application (not at issue here) to claim disability since August 10, 1988.  (AR 40, 231.)  The Social Security Administration ("SSA") denied plaintiff's claim initially and on reconsideration.  (AR 40, 231.)  After an October 16, 1995 ALJ hearing, the ALJ issued his December 22, 1995 decision to find an absence of objective medical findings to establish an impairment(s) to significantly limit plaintiff's ability to perform basic work-related activities.  (AR 45-46, 231.)  On May 19, 1997, SSA's Appeals Council denied plaintiff's request to review the ALJ's decision.  (AR 231.)  Plaintiff did not seek this Court's further review to render the ALJ's decision as final on plaintiff's June 18, 1993 SSI application.

*Plaintiff's Current SSI Application*

On November 15, 1996, plaintiff protectively filed her current SSI application (at issue here) to claim disability since 1993 due to headache.  (AR 69, 70.)  On March 10, 1998, counsel was appointed for plaintiff.  (AR 24.)  With its April 20, 1998 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined that plaintiff's condition is not severe enough to prevent her to work.  (AR 55.)

On June 3, 1998, plaintiff filed her Request for Reconsideration to claim she is disabled.  (AR 59.)  With its July 22, 1998 Notice of Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition did not prevent her to work.  (AR 61.)

On July 30, 1998, plaintiff filed her Request for Hearing by Administrative Law Judge to claim she is disabled.  (AR 66.)  After a June 8, 1999 hearing, the ALJ issued his August 13, 1999 decision to conclude plaintiff presented no evidence of an impairment to preclude her to engage in a full range of work-related activities at all exertional levels, except complex or detailed tasks.  (AR 16.)  The ALJ found plaintiff is neither disabled nor eligible for SSI.  (AR 17-18.)

Plaintiff submitted to the Appeals Council her September 21, 1999 Request for Review of Hearing Decision/Order to appeal the ALJ's August 13, 1999 decision. (AR 9.) On April 18, 2001, the Appeals Council denied plaintiff's request for review. (AR 5.)

Plaintiff pursued a prior action to seek this Court's review of denial of her claim. Based on the parties' stipulation, this Court on December 19, 2001 remanded plaintiff's case for the ALJ to: (1) evaluate an opinion of consultative psychiatrist Ekram Michiel, M.D. ("Dr. Michiel"); (2) re-evaluate plaintiff's maximum residual functional capacity; (3) obtain vocational expert evidence; and (4) consider, and if pertinent, apply Social Security Ruling ("SSR") 82-63 regarding plaintiff reaching age 55. (AR 272-273.)

With its July 1, 2002 order, the Appeals Council vacated the August 13, 1999 ALJ decision and remanded to the ALJ with instructions to give further consideration to Dr. Michiel's opinion and plaintiff's maximum residual functional capacity, obtain vocational expert evidence, consider Social SSR 82-63 and apply as appropriate, provide plaintiff a new hearing, and issue a new decision. (AR 278-279.)

After a February 13, 2003 hearing, the ALJ issued his April 11, 2003 decision to conclude that plaintiff was capable to adjust to work which existed in significant numbers in the national economy prior to January 2001 and that plaintiff is neither disabled nor eligible for SSI. (AR 245-246.) In his decision, the ALJ incorporated and considered plaintiff's January 3, 2002 SSI application which SSA had denied on April 29, 2002. (AR 230.) Plaintiff submitted to the Appeals Council her May 1, 2003 Request for Review of Hearing Decision to appeal the ALJ's April 11, 2003 decision. (AR 225.) On July 2, 2004, the Appeals Council denied plaintiff's request for review to render the ALJ's April 11, 2003 decision as the Commissioner's final decision subject to this Court's review. (AR 218.)

**Medical History And Records Review**

***Thieu V. Nguyen, M.D., Treating Physician***

During 1994-1998, plaintiff treated sporadically with Thieu V. Nguyen, M.D. ("Dr. Nguyen"). Plaintiff complained of and was treated for various ailments, including headache, ear ringing, dizziness, flu, wheezing, bronchitis, left leg and knee pain, asthma, arthralgia, and myalgia. (AR 191-194.) May 24, 1996 notes reflect plaintiff was not disabled. (AR 193.) Plaintiff's weight remained 132-138½

1   pounds.  (AR 191-194.)

2   ***Daniel T. Vu, M.D., Treating Physician***

3   During 1996-1998, plaintiff treated with Daniel T. Vu, M.D. ("Dr. Vu"), for minor ailments.

4   Plaintiff complained of cough, wheezing, sore throat, headaches, dizziness, body aches, eye irritation,

5   and leg pain.  (AR 140-144.)  Plaintiff was consistently assessed with bronchitis and gastritis.  (AR 140-

6   144.)  Her weight remained 136-140 pounds.  (AR 140-144.)

7   ***Fresno County Mental Health***

8   Plaintiff treated with Fresno County Mental Health.  In 1995, plaintiff participated in a Lao

9   women's group, and notes reflect she "was alert, active and able to participate" and was "able to share

10   her thoughts" and "interact with others."  (AR 211, 212, 214.)  According to August 25, 1995 notes,

11   plaintiff stated that "the GAIN program told her that if she was able to come to her therapy group she

12   was able to go to class."  (AR 211.)  September 1, 1995 notes reflect plaintiff's improved feeling from

13   group therapy.  (AR 209.)

14   Plaintiff treated with William Siegfried, M.D. ("Dr. Siegfried"), a psychiatrist.  On August 30,

15   1995, Dr. Siegfried found plaintiff alert and oriented with attentive affect and lucid thinking.  (AR 210.)

16   On November 15, 1995, plaintiff reported that medication "works well," and that she was less angry and

17   able to socialize with family.  (AR 204.)  Dr. Siegfried found plaintiff alert and oriented with lucid

18   thinking, good recall and not suicidal.  (AR 204.)  Dr. Siegfried assessed plaintiff as "stable."  (AR 204.)

19   On January 10, 1996, Dr. Siegfried found plaintiff alert and oriented and assessed major depression and

20   post traumatic stress disorder ("PSTD").  (AR 203.)

21   George Glenn, LCSW ("Mr. Glenn"), completed a January 27, 1996 assessment for plaintiff.

22   Plaintiff's chief complaints included anger outbursts, crying, poor sleep, concentration and memory, lack

23   of energy, feeling depressed, anxiety and nightmares.  (AR 187, 205.)  Plaintiff explained that she fled

24   Laos to Thailand after communists took power and had been forced to witness her uncle's execution by

25   communist troops and to live in the jungle to avoid communist troops before escaping to Thailand.  (AR

26   189, 207.)  Plaintiff reported an unpleasant life in Thai refugee camps before she arrived in the United

27   States.  (AR 189, 207.)  Mr. Glenn found plaintiff was oriented to time, place and person and suffered

28   from poor memory.  (AR 189, 207.)  Mr. Glenn assessed PTSD and a plan for plaintiff to participate in

4

1   group therapy with other Lao women with PTSD.  (AR 190, 208.)

2         On January 22, 1997, Dr. Siegfried noted plaintiff's compliance with Paxil 20 mg daily to

3   produce "good effect: solid sleep (no nightmares)." (AR 167.)  Dr. Siegfried noted plaintiff's increased

4   appetite and that she was alert, oriented and "less depressed." (AR 167.)  On February 19, 1997, Dr.

5   Siegfried noted plaintiff's continued Paxil 20 mg compliance and that she "sleeps all night" but

6   experiences occasional nightmares of war trauma.  (AR 166.)  Dr. Siegfried noted plaintiff's increased

7   appetite and "some improvement" and that plaintiff was alert, oriented, lucid, focused and relevant.  (AR

8   166.)  On April 23, 1997, Dr. Siegfried noted plaintiff Paxil 20 mg compliance but difficulty and

9   nightmares since learning of her brother's recent death.  (AR 165.)  Dr. Siegfried found plaintiff alert,

10  oriented, lucid and focused.  (Ar 165.)  Dr. Siegfried diagnosed major depression, in partial remission,

11  adjustment disorder with mixed emotional features responding to loss of her brother, PTSD features, and

12  personality disorder, not otherwise specified.  (AR 164,165.)  On June 11, 1997, Dr. Siegfried found

13  plaintiff alert and oriented and noted that plaintiff takes Paxil as ordered and which "is helpful no

14  problems." (AR 161.)  Dr. Siegfried assessed major depression with PTSD features.  (AR 161.)

15        Plaintiff did not show for her July 9, 1997 appointment.  (AR 159.)  On July 16, 1997, Dr.

16  Siegfried found plaintiff alert, oriented, lucid and passive but focused.  (AR 158.)  On August 13, 1997,

17  Dr. Siegfried noted that plaintiff sleeps well, has decreased anger and okay appetite.  (AR 157.)

18  According to Dr. Siegfried, plaintiff noted: "I feel strong." (AR 157.)  Dr. Siegfried found plaintiff alert

19  and oriented with lucid, relevant thinking.  (AR 157.)  On September 10, 1997, Dr. Siegfried found

20  plaintiff alert and oriented.  (AR 154.)  On October 8, 1997, Dr. Siegfried noted plaintiff's compliance

21  with and good response to Paxil 20 mg.  (AR 153.)  Dr. Siegfried further noted plaintiff's good sleep,

22  appetite and energy and focused, lucid and relevant thinking.  (AR 153.)  On December 3, 1997, plaintiff

23  expressed concern that her son refused to attend special education classes.  (AR 152.)  Plaintiff noted

24  that her medication "is good" and helps with sleep.  (AR 152.)  Dr. Siegfried found plaintiff alert,

25  oriented, lucid and focused.  (AR 152.)

26        On February 11, 1998, Dr. Siegfried found plaintiff was "doing okay on the medicine" which is

27  "useful." (AR 151.)  Dr. Siegfried noted that plaintiff wished to go out of state to visit relatives and

28  requested more than a month's medication and that plaintiff's family would call for an appointment

when she returned.  (AR 151.)  Dr. Siegfried found plaintiff alert and oriented and assessed major depression with PTSD features, better.  (AR 151.)  Plaintiff missed her June 17, 1998 and September 9, 1998 appointments, and notes reflect she did not update her telephone number so that she could be contacted.  (AR 149, 150.)

According to Fresno County Mental Health, it lacks records for plaintiff from February 1998 to present.  (AR 286-288.)

***Mental Residual Functional Capacity Assessments And Psychiatric Review Techniques***

Archimedes Garcia, M.D. ("Dr. Garcia"), a psychiatrist completed an April 15, 1998 Mental Residual Functional Capacity Assessment to conclude generally that plaintiff is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction and adaptation. (AR 171-172.)  According to Dr. Garcia, plaintiff is able to understand simple instructions, perform sustained simple repetitive tasks, relate and adopt to work like settings. (AR 173.) Another state agency physician affirmed Dr. Garcia.  (AR 173.)

Dr. Garcia completed an April 15, 1998 Psychiatric Review Technique to note the presence of depressive syndrome, mood disturbance, anxiety, and PTSD.  (AR 178-179.)  Dr. Garcia found slight/seldom restriction of daily living activities, difficulties maintaining social functioning, and deficiencies of concentration, persistence or pace.  (AR 182.)

Glenn Ikawa, M.D. ("Dr. Ikawa"), completed an April 24, 2002 Mental Residual Functional Capacity Assessment to conclude generally that plaintiff is not significantly limited in understanding and memory, sustained concentration and persistence, social interaction and adaptation. (AR 348-349.) Dr. Ikawa concluded that plaintiff for simple repetitive tasks is able to remember, understand, sustain concentration and persistence, socialize and adapt.  (AR 350.)  On July 22, 2002, Sadda Reddy, M.D. ("Dr. Reddy"), affirmed Dr. Ikawa's assessment as did Dr. Garcia on August 9, 2002.

Dr. Ikawa completed an April 24, 2002 Psychiatric Review Technique to note plaintiff's adjustment disorder with depressed mood and absence of other disorders.  (AR 333-341.)  Dr. Ikawa found mild restriction/difficulties of daily living activities and maintaining social functioning and concentration, persistence and pace.  (AR 342.)  On July 22, 2002, Dr. Reddy affirmed Dr. Ikawa's assessment.  (AR 332.)

### *Dr. Michiel, Consultative Psychiatrist*

Dr. Michiel conducted a psychiatric evaluation of plaintiff and prepared a March 30, 1998 report. (AR 145.) Dr. Michiel found plaintiff fairly groomed with adequate personal hygiene and cooperative. (AR 145.) Plaintiff chiefly complained that she was depressed and scared. (AR 145.) Plaintiff noted her sudden heart rate increases, breathing and sleeping difficulty, dizziness, headaches, and back and shoulder pain. (AR 145.) Plaintiff claimed inability to remember if she had seven or eight children and that her "husband and children do everything." (AR 146.) According to Dr. Michiel, plaintiff was oriented to person only, not place or city. (AR 146.) Dr. Michiel assessed that plaintiff's mood was depressed, affect was anxious and intense, and thought process was goal-oriented and not delusional. (AR 147.) Dr. Michiel's diagnosis is "[c]onsider post-traumatic stress disorder." (AR 147.) Dr. Michiel assigned a 55 Global Assessment of Functioning ("GAF"). Dr. Michiel further assessed:

> Based upon the observation during the interview, her preoccupation, distraction and the anxiety she revealed during the interview, I believe the patient is unable to maintain adequate attention and concentration and to carry out one or two step simple job instructions.
>
> The patient is unable to relate and interact with coworkers, supervisors and the general public. (AR 147.)

### *Orlando T. Collado, M.D., Consultative Psychiatrist*

Orlando T. Collado, M.D. ("Dr. Collado"), a psychiatrist, conducted a June 5, 1999 psychiatric evaluation. (AR 195.) Plaintiff's chief complaints were that she experienced depression, difficulty thinking, headaches and nightmares and was emotional. (AR 195.) Plaintiff reported becoming emotional and upset when she thought of relatives who were shot during the war. (AR 195.) Plaintiff noted that she experienced nightmares one or two times a week but that medication helped to reduce them. (AR 195.) Mental status examination revealed plaintiff's flat affect, relevant and coherent responses to questions, minimal insight and moderately impaired judgment. (AR 196.) Dr. Collado summarized that plaintiff will not be able to relate to coworkers and supervisors, will be able to follow simple instructions, will have difficulty to follow complex instructions, has poor memory, and has poorly maintained attention and concentration. (AR 197.) Dr. Collado concluded that plaintiff "cannot focus her attention and concentration for a long period of time. At the present time her ability to cope with stressors of an eight-hour a day job on a day to day basis is impaired." (AR 197.) Dr. Collado diagnosed

1   PTSD with depressive symptomatology and assigned a 50 GAF.  (AR 197.)

2       Dr. Collado completed a Psychiatric Review Technique to note an affective disorder with

3   evidence of appetite disturbance with weight change, sleep disturbance, difficulty concentrating or

4   thinking, and suicide thoughts.  (AR 199.)  Dr. Collado further noted symptoms of anxiety related

5   disorders.  (AR 200.)

6                       *Shireen R. Damania, M.D., Consultative Psychiatrist*

7       Shireen R. Damania, M.D. ("Dr. S. Damania"), a board certified psychiatrist, conducted an April

8   8, 2002 psychiatric evaluation.  (AR 322.)  Dr. S. Damania noted that plaintiff "was an extremely poor

9   historian, uncooperative, said 'I don't know,' or 'I don't remember' to all questions," including those

10  asking plaintiff's age, place of birth, number of her children, whether she went to a refugee camp, and

11  how she spends a typical day.  (AR 322-323.)  Plaintiff noted she does not take medications and does

12  not know why.  (AR 322.)  Plaintiff does not watch television because it "bothers her" and denies

13  knowledge of religion.  (AR 323.)  Dr. S. Damania's mental status examination revealed plaintiff's

14  irritable and mildly depressed mood, broad affect, and absence of distress, thought disorder, distinct

15  memory deficits, and concentration difficulties.  (AR 323.)  Plaintiff functioned "in the average range

16  of intellectual functioning" with mildly impaired insight and judgment.  (AR 323.)  Dr. S. Damania

17  diagnosed adjustment disorder with depressed mood and assigned a 55 GAF.  (AR 323-324.)  Dr. S.

18  Damania concluded:

19      No difficulties were noted in her interpersonal skills and social functioning.  There was
        no evidence of any memory deficits or difficulties in concentration despite her
20      verbalizing "I don't remember."  There appeared to be some exaggeration of symptoms.
        There was no evidence of any emotional l[i]ability.
21
        She is able to understand, carry out, and remember simple as well as one- and two-step
22      job instructions.  She is able to respond appropriately to usual work situations and deal
        with changes in a routine work setting if the instructions are presented simply and
23      undimensionally in the language she understands.  (AR 324.)

24      Dr. S. Damania found not mental impairment to limit plaintiff's ability to engage in work

25  activity.  (AR 325.)

26                      *Rustom F. Damania, M.D., Consultative Internist*

27      Rustom F. Damania, M.D. ("Dr. R. Damania"), an internist, conducted an April 8, 2002

28  consultative physical examination.  (AR 326.)  Plaintiff's chief complaints were left knee pain helped

                                                8

by Motrin and Advil, left knee occasionally giving way with no falls, palpitations with no chest pain and relieved by a deep breath, and occasional lower extremity spasms. (AR 326.) Plaintiff's weight was 137 pounds. (AR 327.) Plaintiff was in no acute distress or discomfort and showed no signs of major depression, anxiety, panic, paranoia or difficulty walking. (AR 327.) Dr. R. Damania's physical examination was unremarkable and revealed plaintiff's normal range of motion throughout and normal gait and reflexes. (AR 328-329.) Dr. R. Damania diagnosed arthralgia, by history, particularly left knee and generally found no objective evidence for gross physical disabilities, no ankyloses, deformities or subluxations, and no signs or acute or chronic joint inflammation. (AR 330.) Dr. R. Damania concluded:

> She should have no difficulty working at least six hours or an eight-hour workday with normal breaks. She should have no difficulty lifting occasionally 50 lb., and frequently about 25 lb. In essence there were actually no exertional limitations. There were no postural limitations on bending, stooping, or crouching. There were no manipulative limitations on reaching, handling, feeling, grasping, or fingering. No relevant visual, communicative, or workplace environmental limitations. (AR 330.)

### Tuan V. Luu, M.D., Treating Physician

On December 16, 2002, plaintiff was seen by Tuan V. Luu, M.D. ("Dr. Luu"), and weighed 136 pounds. (AR 356.) Dr. Luu's examination was unremarkable, and he diagnosed knee arthritis and depression with a plan of Celebrex and Tylenol #3. (AR 356.)

### Medications

Plaintiff's medications have included Hydroxyzine, Pamelor, Paxil 20 mg, Albuterol, Trimethoprim, Sulfa, Meclizin 25 mg, Apaplcod 30 mg, Celebrex 200 mg, and Indomethacin. (AR 146, 321.)

### Plaintiff's Activities And Testimony

### Questionnaires And Statements

Plaintiff completed a February 11, 1998 statement to indicate that she separated from her husband on November 5, 1997 and moved in with her son and his family. (AR 88, 93.)

Plaintiff completed a February 11, 1998 Disability Report to claim disability since August 10, 1988 from mental problems, depression, forgetfulness, poor sleep and weakness. (AR 96.) Plaintiff is unable to work due to forgetfulness, poor sleep and loss of energy and concentration. (AR 96.) Plaintiff

is unable to perform household chores.  (AR 99.)  Plaintiff prefers to isolate herself.  (AR 99.)  Plaintiff does not drive.  (AR 99.)

According to an undated Disability Report – Adult, plaintiff claims that she became disabled on March 21, 1993 due to headache, low back pain, nightmares, depression, sleep difficulty, dizziness and asthma.  (AR 103.)

Plaintiff completed an undated Reconsideration Disability Report to claim worsening illness, sleep difficulty, loss of hope, disinterest in social life, and increased depression.  (AR 115.)  Plaintiff is unable to perform household chores and to do anything for herself and needs help for personal care.  (AR 117.)

According to an undated Function Report – Adult, plaintiff has neither purchased groceries, shopped for clothes, banked, gone to post office, cooked, paid bills, used a checkbook, driven, nor used public transportation.  (AR 120-121.)  Plaintiff goes to church, has a "hot temper," and a short memory.  (AR 122.)

Plaintiff completed a March 3, 1998 Daily Activities Questionnaire to note that she lives in an apartment with her family.  (AR 124.)  On an average day, plaintiff rests and attempts to help out with household chores.  (AR 124.)  Plaintiff experiences sleep difficulty from nightmares and takes sleep medication.  (AR 124.)  Plaintiff is able to care for her personal needs.  (AR 124.)  Plaintiff's daughter prepares meals.  (AR 125.)  Plaintiff does not shop.  (AR 125.)  Plaintiff leaves her home six times a month to go to the doctor, drug store and temple.  (AR 126.)  Plaintiff attends Buddhist temple twice a month.  (AR 127.)  Plaintiff is forgetful and has difficulty finishing tasks.  (AR 128.)  Plaintiff is unable to work due to forgetfulness, depression, fear of public and anger attacks.  (AR 128.)

Plaintiff completed a January 3, 2002 Disability Report Adult to note her general inability to communicate in and read English.  (AR 293.)  Plaintiff claimed inability to work from headache, low back and right leg pain, asthma, nightmare, depression, sleep difficulty and dizziness.  (AR 294.)  According to plaintiff, these conditions arose August 10, 1988 and interfere with her ability to concentrate, bend and sit.  (AR 294.)

Plaintiff completed an April 5, 2002 Daily Activities Questionnaire to note that she lives in a home with her family.  (AR 303.)  Plaintiff claims to "always have nightmare[s]," "physical and mental

problem[s]," and inability to control herself.  (AR 303.)  Plaintiff's daughter generally prepares meals, and plaintiff cooks only with her daughter's assistance.  (AR 304.)  Plaintiff's daughter, not plaintiff, shops.  (AR 304.)  Sometimes plaintiff cleans.  (AR 304.)  Plaintiff's activities include watching television cartoons and playing in the backyard.  (AR 304-305.)  Plaintiff prefers to stay home and does not like strangers and to visit anyone.  (AR 305-306.)  Plaintiff is forgetful and "cannot stand for that long." (AR 307.)  After plaintiff became ill, she "tried to do some work[], but . . . could not get anything done." (AR 307.)

Tony Sonpez, plaintiff's friend, completed an April 5, 2002 Daily Activities Questionnaire (Third Party Information) to note that plaintiff likes to remain alone and watch television but is scared to be alone at night or in the dark.  (AR 309-310, 311, 313.)  Plaintiff's condition worsened after her husband left home.  (AR 310.)  Plaintiff lives with her daughter, who prepares plaintiff's meals.  (AR 310, 311.)  Plaintiff needs help with household chores.  (AR 311.)  Plaintiff rarely goes outside.  (AR 311.)  Plaintiff does not have a driver's license and does not use public transportation.  (AR 311.)  Plaintiff gets along with only her daughter.  (AR 312.)  Plaintiff is unable to remember or concentrate.  (AR 313.)

Plaintiff completed a May 6, 2002 Reconsideration Disability Report to note that since she had filed her January 3, 2002 claim, she had not seen a physician, had not been hospitalized or treated at a clinic, and no physician had placed restrictions on her.  (AR 315, 316.)

### *Plaintiff's June 8, 1999 ALJ Hearing Testimony*

Plaintiff testified at the June 8, 1999 ALJ hearing that she lives with her husband but none of the children.  (AR 28.)  Plaintiff attend English classes for "[a]round two years" but is unable to read or write in any language.  (AR 29.)  Plaintiff has not held a job for money during the past 15 years.  (AR 29.)

When asked what medical problems prevent her to work, plaintiff responded "my heart and my memory.  I can't remember a lot of things." (AR 29.)  Plaintiff has experienced nearly constant throbbing left knee pain for a "[l]ong time." (AR 29.)  The pain started when plaintiff felt sad and jumped off the house about three years prior.  (AR 30.)  Plaintiff estimates she can stand five, six minutes.  (AR 30.)  Plaintiff lacks good grip to limit her lifting to ten pounds.  (AR 30.)

Plaintiff stopped receiving mental health care because she no longer has MediCal and cannot get

1   a ride for treatment.  (AR 30-31.)

2       Plaintiff has difficulty remembering, even when she cooks, and finishing chores.  (AR 32.)  Five

3   minutes is the longest plaintiff is able to concentrate.  (AR 33.)  Plaintiff's children remind her to care

4   for her personal needs.  (AR 33.)  Plaintiff's children told her to stop cooking because she might burn

5   the house down.  (AR 33.)  Plaintiff's daughter does housework for plaintiff's home.  (AR 34.)

6   Sometimes plaintiff does the laundry but she forgets to turn off the water.  (AR 34.)

7       Plaintiff's children take her to doctors' appointments in that plaintiff does not know how to drive

8   and has never had a driver's license.  (AR 34.)  Plaintiff cannot go anywhere without her children and

9   claims she is "very sad" and wants to die.  (AR 34, 35.)

10                  ***The February 13, 2003 ALJ Hearing***

11      At the February 13, 2003 ALJ hearing, plaintiff's counsel confirmed that during February 1998

12  to December 2002, plaintiff received no psychiatric treatment and "[n]o medical treatment basically."

13  (AR 261.)

14      At the hearing, the ALJ asked vocational expert Cheryl Chandler ("Ms. Chandler")to assume a

15  hypothetical person who: (1) lacks ability to speak English; (2) is at relevant times younger than age 55;

16  (3) lacks either formal education or past relevant work; (4) lacks exertional limitations; and (5) has

17  psychiatric limitations to restrict her to simple, repetitive work.  (AR 264-265.)  Ms. Chandler opined

18  that for a person with such limitations there is work, including farm labor at all exertion levels (93,000

19  jobs in California of which 55,000 are medium level and 20,000 are light level) and gardening at all

20  exertional levels (49,000 jobs in California of which 17,000 are medium level).

21      As a first hypothetical, plaintiff's attorney asked Ms. Chandler to assume a person who is unable

22  to maintain adequate attention and concentration, carry out one- or two-step job instructions, and relate

23  and interact with coworkers, supervisors and the general public.  (AR 267.)  Ms. Chandler opined there

24  is no work for a person with such limitations.  (AR 267.)

25      As a second hypothetical, plaintiff's attorney asked Ms. Chandler to assume a person who: (1)

26  is not able to relate to coworkers and supervisors; (2) angers when around people and walks away feeling

27  lonely and more depressed; (3) is able to follow simple instructions; (4) has difficulty to follow complex

28  instructions; (5) has poor memory, attention and concentration; (6) is unable to focus her attention and

1   concentration on a task for a long period; (7) has impaired ability to cope with stressors of an eight-hour

2   job on a day-to-day basis; and (8) cannot be around people.  (AR 267.)  Ms. Chandler opined that a

3   person with such limitations would be unable to find work.  (AR 267.)

### The ALJ's Findings

4

5   In his April 11, 2003 decision, the ALJ identified the issue as whether changed circumstances

6   had occurred since the August 13, 1999 ALJ decision, and if not, whether the ALJ must adopt the prior

7   decision.  (AR 231.)  In concluding plaintiff is not disabled and thus ineligible for SSI, the ALJ found:

8       1.   Plaintiff's PTSD was a severe impairment prior to January 2001 but did not meet or

9            medically equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404,

10           Subpart P, Appendix 1.

11      2.   Plaintiff's allegations regarding her limitations are not totally credible.

12      3.   Prior to January 2001, plaintiff had the residual functional capacity to perform work at

13           all exertional levels and could understand, remember and carry out one- and two-step

14           instructions and lacked exertional limitations.

15      4.   Plaintiff is illiterate.

16      5.   Prior to January 2001, considering the types of work that plaintiff was capable to perform

17           in combination with her age, education and work experience, plaintiff could have made

18           vocational adjustment to work that existed in significant numbers in the national

19           economy and including farm laborer (93,000 jobs in California) and gardening (49,000

20           jobs in California).

21      6.   Since January 2001, plaintiff's subjective complaints associated with general inability

22           to function physically and mentally are not fully credible.

23      7.   Since January 2001, plaintiff lacks an impairment(s) to significantly limit her ability to

24           perform basic work-related activities; thus, plaintiff lacks a severe impairment.  (AR

25           244-246.)

### DISCUSSION

26

### Standard Of Review

27

28   Congress has provided limited judicial review of a Commissioner's decision made through an

ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]   Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). Plaintiff must furnish medical and other evidence about plaintiff's medical impairments.  20 C.F.R. §§

---

[1]         "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine whether you are disabled or blind.  You are responsible for providing that evidence.")

_____Here, plaintiff claims disability since August 10, 1998 due to headache, low back and right leg pain, asthma, nightmares, depression, forgetfulness, sleep difficulty and dizziness.  (AR 96, 128, 294.) As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that plaintiff is not disabled is based on proper legal standards and substantial evidence.

_____With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's April 11, 2003 decision.

**Evaluation Of Physician Opinions**

Plaintiff criticizes the ALJ's evaluation of the physician opinions, in particular, rejection of Dr. Michiel's assessment and picking and choosing portions of newer consultative opinions.   The Commissioner responds that the ALJ substantiated rejection of Dr. Michiel's assessment to comply with the remand order.

As a reminder, Dr. Michiel prepared a March 30, 1998 report and generally assessed plaintiff's inability to maintain adequate attention and concentration and to carry out one- or two-simple job instructions.  (AR 147.)  The Ninth Circuit Court of Appeals distinguishes opinions among physicians who treat claimants (treating physicians), who examine but do not treat claimants (examining physicians), and who neither treat nor examine claimants (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1995).  As with treating physicians, an ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d at 830.  "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830.  An ALJ may meet his obligation to set forth specific, legitimate reasons based on substantial evidence in the record "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Cotten v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  "The ALJ must do more than offer his conclusions.  He must set forth

15

his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

Nonetheless, an ALJ may reject a physician's contradicted or uncontradicted opinion which is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).   Inconsistencies and ambiguities in a physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  An ALJ may reject a physician's report based on a claimant's exaggerated claims.  *See, e.g., Sandgathe*, 108 F.3d at 980.  The ALJ is responsible for determining credibility and resolving conflicts in the medical testimony and ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

After comprehensively reviewing the medical evidence, including Dr. Michiel's assessment (AR 232-236), the ALJ noted inconsistencies to undermine Dr. Michiel's assessment:

> The claimant was evaluated on March 30, 1998 by Dr. Michiel, who noted claimant reported she was unable to sleep because of bad dreams.  This is inconsistent with the claimant's statements to her treating physician, Dr. Siegfried, that with her medication, she slept solidly without nightmares. The claimant gave vague answers to questions, i.e., she could not remember the number of children she had.  She denied suicidal ideation, but stated she wanted to die.  Dr. Michiel indicated that claimant's thought process was goal-directed. Based on this single examination, Dr. Michiel did not declare a diagnosis, but indicated "consider post-traumatic stress disorder," and an inability to engage in substantial gainful activity.  As such, this report based on a single examination and without a solid diagnosis, is not given much weight, because it is contradictory to the progress reports from her treating practitioner that indicated improvement with medication and treatment, and because it appears to be based solely on the claimant's subjective, inconsistent complaints.  (AR 239.)

The ALJ provided properly supported specific and legitimate grounds to reject Dr. Michiel's assessment which was contradicted by Dr. Siegfried, plaintiff's treating physician.  Dr. Siegfried consistently noted that plaintiff was alert, oriented, attentive, focused, lucid and stable and that medication produced improvement, including solid sleep, increased appetite and energy, and decreased anger. (AR 151- 153, 157, 161, 166, 167, 204, 210.) The medical evidence reveals an absence of mental health treatment for plaintiff for no less than four years following the February 11, 1998 cessation of treatment.  (AR 261, 286-288.)  In fact, plaintiff missed appointments and failed to update her telephone number to allow contact with her.  (AR 149, 150, 159, 185, 186, 233.)  Dr. Michiel's assessment fell short of substantial evidence to support disability.  *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

16

1  1995) (limited references to medically observed limitations fail to satisfy substantial evidence

2  requirement).

3       In addition, Dr. S. Damania's more recent evaluation contradicts Dr. Michiel's assessment.  Dr.

4  S. Damania explained that plaintiff was uncooperative and failed to attempt to answer basic questions.

5  (AR 322-323.)  Dr. S. Damania found that plaintiff exhibited an "average range of intellectual

6  functioning." (AR 323.)  Dr. S. Damania noted plaintiff's exaggeration of symptoms and absence of

7  difficulties in interpersonal skills and social functioning, memory deficits, concentration difficulties or

8  emotional liability.  (AR 324.)  Dr. Damania further found plaintiff able to understand, carry out and

9  remember simple and one- and two-step job instructions, respond appropriately to usual work situations,

10 and deal with changes in routine work setting.  (AR 324.)  Dr. Damania concluded that no mental

11 impairment limits plaintiff to work.  (AR 325.)

12      The ALJ set out an extremely detailed and thorough summary of the evidence and provided his

13 reasonable interpretation of them.  Dr. Michiel's opinion lacked clinical findings to support it.  Plaintiff

14 points to no error in the ALJ's evaluation of the medical opinions.

15                              **Vocational Expert Evidence**

16      Plaintiff argues that the ALJ did not comply with the remand order regarding vocational expert

17 testimony and "did not properly develop vocational support for his conclusions."  The Commissioner

18 responds that the ALJ obtained necessary vocational evidence to comply with the remand order.

19      In the final step of the five-step disability evaluation, the Commissioner has the burden to show,

20 in light of a claimant's residual functional capacity, he/she can engage in other substantial gainful work

21 that exists in the national economy.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The

22 Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects

23 all the claimant's limitations."  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  Alternatively, the

24 Commissioner can refer to the Medical-Vocational Guidelines.  *Osenbrock*, 240 F.3d at 1162.

25      An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

26 evidence in the record."  *Osenbrock*, 240 F.3d at 1165.  An ALJ may so limit a hypothetical even when

27 medical evidence conflicts.  *Magallanes*, 881 F.2d at 756.  "An ALJ is free to accept or reject restrictions

28 in a hypothetical question that are not supported by substantial evidence."  *Osenbrock*, 240 F.3d at 1165;

1  *see Magallanes*, 881 F.2d at 756-757.  "Although the hypothetical may be based on evidence which is
2  disputed, the assumptions in the hypothetical must be supported by the record."  *Andrews v. Shalala*, 53
3  F.3d 1035, 1043 (9th Cir. 1995).  The parameters of an ALJ's hypotheticals need not "include any alleged
4  impairments that the ALJ has rejected as untrue."  *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997).
5  An ALJ is not bound to accept restrictions in a hypothetical question of claimant's counsel.  *Martinez*
6  *v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).

7       The ALJ determined "that there are no objective findings on which to base any physical
8  restrictions."  (AR 242.)  Plaintiff's counsel acknowledged the absence of plaintiff's medical treatment
9  for more than four years.  (AR 261.)  Dr. R. Damania's April 8, 2002 consultative examination was
10  unremarkable and revealed plaintiff's normal range of motion throughout and normal gait and reflexes.
11  (AR 328-329.)  Dr. R. Damania reasonably concluded that plaintiff would have no difficulty to work at
12  least six hours of an eight-hour workday with normal breaks.  (AR 330.)  Dr. R. Damania found neither
13  exertional, postural, manipulative, visual, communicative nor environmental limitations.  (AR 330.)  In
14  the absence of severe physical impairments, the ALJ reasonably found no impact on her physical residual
15  functional capacity.  (AR 242, 244.)  The medical record shows plaintiff's continued mental
16  improvement to permit the ALJ to reasonably find that plaintiff could understand, remember and carry
17  out simple one- and two-step instructions.  (AR 242, 244.)  The ALJ's hypothetical was properly limited
18  to impairments supported by substantial evidence.  Ms. Chandler identified work which plaintiff is able
19  to perform with the residual functional capacity supported by substantial evidence.  The ALJ was not
20  required to embellish his hypothetical with alleged impairments which he rejected as untrue.  Plaintiff
21  points to no error in the vocational evidence.

22                              **Plaintiff's Credibility**

23       Plaintiff challenges the ALJ's evaluation of plaintiff's credibility.  The Commissioner responds
24  that the ALJ properly considered plaintiff's credibility.

25       "Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th
26  Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe
27  every allegation of disabling pain."  *Fair*, 885 F.2d at 603.  An ALJ "may disregard unsupported, self-
28  serving statements."  *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

1   1995).

2       A claimant bears an initial burden to "produce objective medical evidence of underlying

3   'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably

4   be expected to produce pain or other symptoms.'" *Baston v. Commissioner of Social Security Admin.*,

5   359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  If

6   a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the claimant's testimony

7   shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms

8   with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196

9   (quoting *Smolen*, 80 F.3d at 1284.)  "If the ALJ finds that the claimant's testimony as to the severity of

10  her pain and impairments is unreliable, the ALJ must make a credibility determination with findings

11  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

12  testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

13      If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing

14  court may not engage in second-guessing.  *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse

15  an ALJ's credibility determinations "based on contradictory or ambiguous evidence."  *Johnson v.*

16  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

17  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may

18  discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character

19  evidence."  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  Moreover, "the ALJ is entitled to

20  draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

21  1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

22      In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

23      In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,
        inconsistencies either in his testimony or between his testimony and his conduct, his
24      daily activities, his work record, and testimony from physicians and third parties
        concerning the nature, severity, and effect of the symptoms of which he complains.
25      *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting
        *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An
26      ALJ's finding that a claimant generally lacked credibility is permissible basis to reject
        excess pain testimony.

27

28  / / /

19

1    *See also* S.S.R. 96-7p.[2]

2        An ALJ may consider the following factors to determine the credibility of a claimant's

3    allegations of disabling pain:

4        1.    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

5        2.    Precipitating and aggravating factors (e.g., movement, activity, environmental

6              conditions);

7        3.    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

8        4.    Treatment, other than medication, for relief of pain;

9        5.    Functional restrictions;

10       6.    Claimant's daily activities;

11       7.    Unexplained, or inadequately explained, failure to seek treatment or to follow up a

12             prescribed course of treatment; and

13       8.    Ordinary techniques to test a claimant's credibility.

14   *Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

15       The ALJ broke down in detail plaintiff's allegations of physical impairments and subjective

16   complaints and demonstrated the absence of underlying findings to support plaintiff's claims.  (AR 237-

17   238, 240.)  As noted by the Commissioner, no objective evidence supports physical impairments to

18   induce the degree of pain which plaintiff claims.  Plaintiff failed to meet her initial burden to

19   demonstrate an underlying physical impairment. Dr. R. Damania noted the absence of objective findings

20   to support inability to work.

21       The ALJ extensively addressed plaintiff's claims of mental impairments, limited mental health

22   treatment with group therapy and medication, testimony and activities. (AR 240-242.)  The ALJ

23   correctly noted the absence of evidence and records to support a severe psychiatric impairment or a

24   _____

25       [2]      Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1)  claimant's daily
         activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate
26       and aggravate the symptoms; (4) type, dosage, effectiveness, and side-effects of any medication the claimant takes or has
         taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief
27       of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other
         symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other
28       factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1   diagnosis of depression or PSTD, especially considering plaintiff stopped receiving treatment in

2   February 1998. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence

3   "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.");

4   *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests "a lower level

5   of both pain and functional limitation."); *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982)

6   (existence of an emotional disorder "is not per se disabling", especially if "amenable to control.")

7         Moreover, plaintiff's claims of poor sleep are contradicted by the treatment notes which reflect

8   solid sleep.  (AR 153, 157, 166, 167, 195, 303, 304.)  Plaintiff's credibility is further eroded by her

9   claimed inability to do anything for herself and to remember her children and similar basic information.

10  (AR 117, 146, 322-323.) Plaintiff planned an out-of-state trip to undermine her alleged degree of mental

11  impairment.  (AR 151.)  Plaintiff denied knowledge of religion although she attended Buddhist temple

12  twice monthly.  (AR 122, 126, 127, 323.)  Plaintiff denied watching television although she noted she

13  enjoys watching television cartoons.  (AR 304-305, 323.)

14        Substantial evidence supports the ALJ's specific findings on plaintiff's credibility to preclude

15  this Court from to second guess the ALJ.  Plaintiff fails to demonstrate error in the ALJ's evaluation of

16  plaintiff's credibility.

17        **<u>CONCLUSION AND ORDER</u>**

18        For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

19  properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by

20  substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

21  Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to

22  remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of

23  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Nang

24  Soudchantho and to close this action.

25        IT IS SO ORDERED.

26  **Dated:    December 9, 2005**          **/s/ Lawrence J. O'Neill**
    66h44d                           UNITED STATES MAGISTRATE JUDGE

27

28

21